IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KELLI LEE SIMONEAU,** | 04-CV-1733-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **NIKE, INC.,** | |
| Defendant. | |

**DANIEL W. DICKERSON**
610 S.W. Alder, Suite 918
Portland, OR  97205
(503) 274-2924

      Attorney for Plaintiff

**AMY JOSPEH PEDERSEN**
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR  97204
(503) 294-9408

**STEVEN D. OLSON**
Tonkon Torp LLP
888 S.W. Fifth Avenue, Suite 1600
Portland, OR  97204
(503) 802-2159

      Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Nike, Inc.'s Motion for Summary Judgment (#29).

On February 14, 2006, the Court heard oral argument on Nike's Motion and took the Motion under advisement.

For the reasons that follow, the Court **GRANTS** Nike's Motion.

## FACTS

The record viewed in the light most favorable to Plaintiff reflects the following facts.

Plaintiff was employed by Nike from November 1981 until April 2004. Her most recent position was Customer Service Representative.

In August 2002, Plaintiff was tested for Attention Deficit Disorder (ADD). On August 19, 2002, Plaintiff informed Eileen Seely and Monica Buys, her supervisors, about the tests and told them that "the doctors think I have ADD." In September 2002, Plaintiff received the results of the tests and was diagnosed with ADD. On September 10, 2002, Plaintiff told Seely and Buys about her diagnosis.

Plaintiff's counselor, Linda Tombaugh, testified in her deposition that ADD does not develop initially in adults. Although it often goes undiagnosed, a person who has ADD has had the condition from childhood. Accordingly, the inference most

2 - OPINION AND ORDER

favorable to Plaintiff is that she has had ADD since childhood even though she was first diagnosed in 2003. Tombaugh could not identify a broad classification of jobs that Plaintiff is precluded from performing because of her ADD.

On March 5, 2003, Plaintiff met with her manager, K'Lynn Stoner. At the meeting, Stoner communicated her performance expectations and outlined how Plaintiff had "not met NIKE standards." On March 7, 2003, Stoner drafted a "Record of Coaching" to memorialize the March 5, 2003, meeting with Plaintiff. In her Complaint, Plaintiff characterizes the meeting and/or the Record of Coaching as an "initial reprimand."

In the Record of Coaching, Stoner noted the reason for "this action is due to inaccurate time reporting on your timecards and for not taking at least a half-hour lunch when working 6 or more hours a day." Stoner listed six previous occasions during 2002 and 2003 when Nike had discussed these issues with Plaintiff. Plaintiff, however, testified this was the first Record of Coaching she received at Nike.

In the space for "Employee comments" in the Record of Coaching, Plaintiff wrote in part: "Going thru a divorce & personal bankruptcy, sick children, single-parent, stuff - has been difficult." Plaintiff did not mention ADD as a factor in her inaccurate time reporting or her failure to take required lunch breaks.

3 - OPINION AND ORDER

Plaintiff filed for bankruptcy on March 31, 2003.

On October 23, 2003, Plaintiff went on medical leave.

On March 22, 2004, Plaintiff filed a complaint with the Bureau of Labor and Industries (BOLI) in which she alleged Nike discriminated against her based on her ADD.

On April 12, 2004, Nike terminated Plaintiff's employment because she was never released to return to any available job at Nike.

On June 14, 2004, BOLI mailed Plaintiff a Notice of Right to File a Civil Suit in which BOLI concluded Plaintiff had not established any discrimination by Nike.

In August 2004, Plaintiff filed an amended Chapter 13 bankruptcy plan that included amended schedules. Plaintiff did not disclose her claim against Nike in either her original or her amended bankruptcy filings.

## **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a

4 - OPINION AND ORDER

genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*.

"If [Defendant] has carried its burden of production, [Plaintiff] must produce evidence in response. In that event, he cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003)(citations omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

Nike argues it is entitled to summary judgment because 1) Plaintiff's claims are barred by judicial estoppel and 2) the record does not contain any evidence from which a trier of fact

5 - OPINION AND ORDER

could conclude Plaintiff is disabled within the meaning of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*

## I. Judicial Estoppel

Nike argues Plaintiff is judicially estopped from bringing this action because she failed to disclose her claim against Nike in her bankruptcy action.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."  *Id.* at 783 (citing, among others, *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992), and *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999)).

The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton,* 270 F.3d at 783.  The bankruptcy court may accept the debtor's nondisclosure of potential claims in many ways.  *Id.* at 784.  In *Hamilton,* the Ninth Circuit relies on both *In re Coastal Plains,* 179 F.3d 197, and *Donaldson v. Bernstein*, 104 F.3d 547

6 - OPINION AND ORDER

(3rd Cir. 1997). In *Coastal Plains,* the Fifth Circuit held the bankruptcy court accepted a debtor's position when it lifted a stay based in part on the debtor's nondisclosure in its bankruptcy schedules. 179 F.3d at 210. In *Donaldson*, the Third Circuit held judicial acceptance was satisfied when the court approved the debtor's plan of reorganization. 104 F.3d at 555-56.

In this case, there is no question that Plaintiff's claim against Nike falls within the definition of a claim that must be disclosed in bankruptcy.

> The term "claim" means--
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Nonetheless, Plaintiff argues her claim against Nike does not fall within this definition because the statute should not be construed "to include claims which are only pipe dreams at the time of the filing of the bankruptcy schedules." Although Plaintiff describes her claim against Nike as only a "potential

7 - OPINION AND ORDER

claim" and argues such a claim is not within the scope of § 101(5), she does not cite any authority to support this argument. To the contrary, Plaintiff's argument contradicts the plain language of the statute. Thus, Plaintiff's claim falls within the scope of the statute even if it was contingent, disputed, and unmatured at the time Plaintiff filed her amended schedules in August 2004.

Accordingly, Plaintiff was required to disclose her claims to the bankruptcy court and failed to do so. When the bankruptcy court approved Plaintiff's amended schedules and modified her Chapter 13 plan of reorganization in August 2004, it accepted Plaintiff's nondisclosure of her claim against Nike. In the context of failure to disclose a claim in bankruptcy, the law of judicial estoppel is well-established in this circuit.

Accordingly, the Court concludes Nike is entitled to summary judgment because Plaintiff's action against Nike is barred by judicial estoppel.

## II. Plaintiff's ADA Claims

Even if judicial estoppel did not apply, Defendant argues it is entitled to summary judgment on the merits of Plaintiff's ADA claims because the record does not contain any evidence to establish Plaintiff is disabled within the meaning of the ADA. Plaintiff's First, Second, and Third Claims all require such evidence.

8 - OPINION AND ORDER

Title I of the ADA prohibits states and other employers from "discriminating against a qualified individual with a disability because of that disability . . . in regard to . . . terms, conditions and privileges of employment."  42 U.S.C. § 12112(a). To state a *prima facie* case under the ADA, Plaintiff "must prove that [s]he is a qualified individual with a disability who suffered an adverse employment action because of [her] disability."  *See Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996).  Plaintiff bears the burden of proving she is disabled within the meaning of the ADA.  *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001).

An individual is disabled under the ADA when she "(1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  *Id.* (internal quotations and citation omitted).

Here Plaintiff contends she is substantially limited in the major life activity of working because of her ADD.  To be considered substantially limited in the major life activity of working under regulations promulgated by the Equal Employment Opportunity Commission (EEOC), an individual must be

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job

9 - OPINION AND ORDER

>    does not constitute a substantial limitation
>    in the major life activity of working.

29 C.F.R. § 1620.2(j)(3)(i). Plaintiff must "present specific evidence about relevant labor markets to defeat summary judgment on a claim of substantial limitation of 'working.'" *See Thornton,* 261 F.3d at 795. Conclusory allegations about an inability to perform certain work are insufficient to defeat a motion for summary judgment. *Broussard v. Univ. of Cal.*, 192 F.3d 1252 (9th Cir. 1999).

In *Thornton*, the Ninth Circuit upheld the district court's grant of summary judgment to the employer because the plaintiff "failed to present evidence of the jobs from which she was precluded and of the relevant labor markets for that class of jobs." 261 F.3d at 796. *See also Broussard,* 192 F.3d at 1258 (plaintiff's evidence that she was limited to light and sedentary work not sufficient to demonstrate a genuine issue of fact); *Thompson v. Holy Family Hosp.*, 121 F.3d 537 (9th Cir. 1997)(evidence that nurse was precluded from providing "total patient care" was not sufficient to show the plaintiff was precluded from engaging in an entire class of jobs).

Defendant contends Plaintiff has failed to present any evidence regarding the relevant labor markets or that her ADD precludes her from performing a class of jobs. Although Plaintiff argues she cannot work around a lot of noise and distractions, she has trouble tracking her time, and has been

10 - OPINION AND ORDER

unable to find another job, she admits she currently is searching actively for jobs similar to the one she held at Nike.

The Court concludes Plaintiff has not presented any evidence to satisfy the requirements of *Thornton* and *Broussard*:  She does not identify any specific class of jobs she is unable to perform and does not present any evidence regarding relevant labor markets.

Accordingly, the Court concludes Defendant is entitled to summary judgment as to Plaintiff's First, Second, and Third Claims on this basis also.

### III. Intentional Infliction of Emotional Distress and Hostile Work Environment

Defendant also argues it is entitled to summary judgment as to Plaintiff's Third Claim (hostile work environment) and Fourth Claim (intentional infliction of emotional distress) because the undisputed evidence is not sufficient to create a fact question as to either claim.

The Ninth Circuit has not recognized a hostile work environment claim under the ADA and has expressly declined to decide whether such a claim exists.  *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003).  A number of courts, however, have acknowledged the possibility of such a claim.  For example, in *Walton v. Mental Health Ass'n of S.E. Pa.*, the Third Circuit applied the Title VII framework and analysis to hostile work environment claims under the ADA because the "Supreme Court

11 - OPINION AND ORDER

has held that language in Title VII that is almost identical to . . . language in the ADA creates a cause of action for a hostile work environment." 168 F.3d 661, 666 (3d Cir. 1999)(internal quotation and citation omitted). If such a cause of action exists, therefore, the elements would be similar to those required under the Title VII framework.

Under the Title VII framework, harassment can be a form of discrimination. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). Thus, to establish a *prima facie* case of hostile work environment based on her disability, Plaintiff must show 1) she is a qualified individual with a disability, 2) she was subjected to verbal or physical harassment because of her disability, 3) the conduct was unwelcome, and 4) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment. *Walton*, 168 F.3d at 667. *See also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1997). For the Court to determine whether the conduct was sufficiently severe or pervasive, Plaintiff must prove she subjectively felt the conduct was abusive and that a reasonable person also would find the conduct was hostile or abusive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). Factors a court may consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating,

12 - OPINION AND ORDER

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id*. at 23.

As noted, Plaintiff has failed to present evidence sufficient to create a fact question as to whether Plaintiff is a qualified individual with a disability, and, therefore, her hostile work environment claim fails on that basis in any event.

As to the remaining elements of her *prima facie* case, Plaintiff does not identify clearly the conduct that she contends created a hostile work environment.  In its Concise Statement of Facts, Nike, however, asserts Plaintiff's claim is based on the following:

1. Reallocating Plaintiff's work duties to accommodate changes in business;

2. Refusing to provide Plaintiff with an end cubicle;

3. Supervising Plaintiff's work hours and performance;

4. Failing to "visit" with Plaintiff enough;

5. Failing to special order certain office supplies, specifically a Day-Timer calendar; and

6. Asking Plaintiff to document her complaints about her supervisors in writing.

Although Plaintiff disagrees with Nike's fact statement, she admits her hostile work environment claim "may pertain to the reallocation of work duties, failure to make accommodations, and failure to provide adequate supervision."  Plaintiff, however,

13 - OPINION AND ORDER

does not cite to any evidence in the record that supports her disagreement with Nike's statement nor does she identify any other conduct that allegedly created a hostile work environment.

To the extent Plaintiff bases her hostile work environment claim on the conduct identified by Nike, Plaintiff's claim fails. The Court finds none of the incidents that Nike identifies, either individually or in combination, are sufficiently severe or pervasive to establish a *prima facie* discrimination claim for a hostile work environment based on disability.  Accordingly, the Court concludes Nike is entitled to summary judgment on Plaintiff's discrimination claim for hostile work environment based on disability on this basis also.

Plaintiff's claim for intentional infliction of emotional distress is based on the same conduct underpinning her hostile work environment claim.  Again, the Court finds this record, viewed in the light most favorable to Plaintiff, does not contain evidence from which a trier of fact could conclude Nike's conduct is sufficiently egregious to support a claim for intentional infliction of emotional distress.  Accordingly, the Court concludes Nike is entitled to summary judgment as to that claim on this additional basis also.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for

14 - OPINION AND ORDER

Summary Judgment (#29).

    IT IS SO ORDERED.

    DATED this 6th day of April, 2006.

                                            /s/ Anna J. Brown

                                        _____
                                        ANNA J. BROWN
                                        United States District Judge

15 - OPINION AND ORDER